35 Wn.2d 863 (1950)
216 P.2d 212
In the Matter of the Estate of EVA B. SMILEY, Deceased.
PACIFIC NATIONAL BANK, as Executor, Appellant,
v.
THE SUPERVISOR OF THE INHERITANCE TAX DIVISION, Respondent.[1]
No. 31215.
The Supreme Court of Washington, Department One.
March 14, 1950.
Edward M. Hay, David O. Hamlin, and Axel C. Julin, for appellant.
The Attorney General and William C. Klein, Assistant, for respondent.
GRADY, J.
This case is before the court to review a judgment approving a determination made by the inheritance tax and escheat division that the proceeds of "single premium life policies" were not insurance exemptions provided in Rem. Rev. Stat. (Sup.), § 11211b [P.P.C. § 974-15]. The appellant is the executor of the will of Eva B. Smiley, deceased, and the respondent is the supervisor of the inheritance tax and escheat division.
On September 28, 1935, Eva B. Smiley deposited with The Equitable Life Assurance Society of the United States the *865 sum of $18,770 and received what was designated a single premium life insurance policy in the sum of $20,000 payable upon her death to certain named beneficiaries. On that date the decedent paid to the same society the sum of $2,430 and received from it a nonrefund life annuity by which the society promised to pay to her the sum of $73.91 quarterly during her lifetime. On October 1, 1935, she deposited with Equitable Life Insurance Company of Iowa the sum of $18,700.60 and received what was designated a single payment life insurance policy for the sum of $20,000 payable upon death substantially as provided in the other similar contract. On that date she paid to the same company the sum of $3,299.40 and received a nonrefund life annuity payable in the sum of $480.39 annually during her lifetime. At that time the decedent was of the age of seventy-eight years. She was not required to take any physical examination as to her suitability as an insurance risk. At the time of her death, which occurred on November 4, 1945, the decedent was eighty-seven years of age.
A controversy arose between the executor and the inheritance tax and escheat division as to whether the amounts derived from the two policies were taxable. If they were insurance proceeds they were subject to an exemption to the extent of $40,000, but if the moneys represented by them were transfers or gifts made or intended to take effect in possession or enjoyment after the death of the decedent, the estate was indebted to the state in the sum of $8,824.71. For convenience we shall refer to the documents as contracts and annuities respectively.
The theory advanced by respondent is that the contract and annuity in each case must be considered together as one transaction, and when this is done and the substance and reality of the transactions are considered, it becomes apparent that regardless of what they are labeled the contracts are not life insurance policies because the essential characteristics of risk-shifting and risk-distributing historically and commonly involved in a life insurance contract are absent. Respondent relies strongly on Helvering v. Le *866 Gierse, 312 U.S. 531, 85 L.Ed. 996, 61 S.Ct. 646, and a line of cases in accord with that decision.
In support of its contention that the contracts constitute life insurance policies appellant advances the theory that the annuities are separate and distinct from the respective contracts made on the same dates, and they were not dependent upon each other; that the statutory definition of "insurance," formerly set forth in Rem. Rev. Stat., § 7032 [P.P.C. 652-1], and the essential elements of an insurance contract mentioned in State ex rel. Fishback v. Universal Service Agency, 87 Wash. 413, 151 Pac. 768, Ann. Cas. 1916C, 1017, bring the contracts into the field of insurance in that there existed a peril or risk to the decedent which was insured against, and thereby the situation presented is distinguishable from those appearing in the cases upon which respondent relies. The appellant argues that in those cases it was found as a fact that the respective contracts and annuities were dependent upon each other in that the insurance company would not have made one without the other, and when thus considered it was concluded that, as the total consideration was prepaid and exceeded the face value of the "insurance" policy, any risk taken by the insurance company that the prepayment would earn less than the amount paid to the "insured" as an annuity was an investment risk similar to the risk assumed by a bank but was not an insurance risk. The distinction sought to be drawn is that by our statutory definition of insurance the risk element is a risk to the insured rather than to the insurer.
[1] We are of the opinion that each contract and annuity must be construed together for the purposes of this case. The question before the court is the nature of the contracts between the decedent and the companies and whether the amounts derived from the contracts are proceeds of insurance within the meaning of the inheritance tax statutes. In our determination of this question we must be guided by the substance or effect of the transaction rather than the particular form or label adopted. This *867 maxim has had frequent application in inheritance tax cases. Ballou v. Fisher, 154 Ore. 548, 61 P. (2d) 423; Mossberg v. McLaughlin, 125 Conn. 680, 7 A. (2d) 910; In re Jones Estate, 350 Pa. 120, 38 A. (2d) 30. Although there is no finding or admission of the parties that either contract would have been issued without an annuity, it does appear that each was made on the same date between the same parties, and to determine the question presented we must look to the entire transaction in each case.
[2-4] We are not in accord with the contention of appellant that our statutory definition of insurance as applied to a life insurance policy is limited to a risk to the insured. The statutory definition was a part of Rem. Rev. Stat., § 7032, and was as follows:
"Insurance is a contract whereby one party called the `insurer,' for a consideration, undertakes to pay money or its equivalent, or to do an act valuable to another party called the `insured,' or to his `beneficiary,' upon the happening of the hazard or peril insured against, whereby the party insured or his beneficiary suffers loss or injury."
In effect this definition of insurance is no different than set forth in In re Knight's Estate, 31 Wn. (2d) 813, 199 P. (2d) 89. Inherent in all life insurance is a general scheme to distribute actual losses among a large group of persons bearing similar risks, and as a consideration for the insurer's promise, the insured makes a ratable contribution to a general insurance fund, called a premium. Life insurance involves both risk-shifting and risk-distributing. A contract may be a risk-shifting device, but to be a contract of insurance, which is a risk-distributing device, it must possess both features, and unless it does it is not a contract of insurance whatever be its name or its form. Helvering v. Le Gierse, 312 U.S. 531, 85 L.Ed. 996, 61 S.Ct. 646; Vance on Insurance (2d ed.) 1, §§ 1-3.
[5, 6] The ordinary life insurance policy is a contract by which the insured pays to the insurance company a sum of money at fixed intervals of time, and, in return, the insurance company promises to pay a stated sum of money upon his death to the beneficiary named therein. The beneficiary *868 is usually some person who is beneficially interested in the continuity of life of the insured, and the purpose of the insurance is to protect him against the hazard of death and compensate him for the loss sustained by the death of the insured. The hazard or risk taken by the insurance company is that the insured may die before he has paid enough premiums, which together with any income therefrom makes an amount less than the amount the insurance company has undertaken to pay. The hazard or risk taken by the insured or the beneficiaries is the death of the former.
[7] The contracts in question contain many of the usual provisions to be found in life insurance policies, but the inclusion of these provisions is not determinative. When we look to the substance of both transactions and consider realities we find, in the case of one company, that it received from the decedent the sum of $21,200. The company promised to pay to the decedent a total of $295.64 annually during her lifetime. This amounted to nothing more than interest on the total amount received at the rate of approximately 1.4%. In the case of the other company it received $22,000 and promised to pay to the decedent $480.39 per annum during her lifetime. This would amount to interest on the total amount received at the rate of approximately 2.2%. The objective to be attained was not insurance upon the life of the decedent, but a method and means whereby she might place a part of her property in safe and responsible hands to be delivered upon her death to certain named persons, and we cannot find in such an arrangement any hazard or risk to anyone. We do not wish to be understood by anything we have said in this opinion that there may not be a valid life insurance policy with a lump sum premium paid in advance, but it must be insurance in fact and not a tax-evading device.
Substantially the same question involved in this case was decided in Helvering v. Le Gierse, supra; Keller's Estate v. Commissioner of Internal Revenue, 312 U.S. 543, 85 L.Ed. 1032, 61 S.Ct. 651; Day v. Walsh, 132 Conn. 5, 42 A. (2d) 366; State ex rel. Thornton v. Probate Court, 186 Minn. 351, *869 243 N.W. 389; Old Colony Trust Company v. Commissioners, 102 F. (2d) 380. In three of those cases the insurance companies had issued what appeared to be on their faces life insurance policies and annuities, and in two of the cases the purported life insurance and annuity was contained in one document. The courts all held that when the ages of the decedents, the circumstances surrounding them, the nature and character of the so-called insurance policies and annuities and the apparent objectives to be attained were considered, and looking to substance rather than form, all led to the inevitable conclusion that there was no element of insurance risk involved and that such so-called policies and annuities were nothing more than devices to avoid succession taxes. We are in accord with the reasoning of the courts in those cases and are of the opinion that the contracts before us are not life insurance policies. See, also, Annotation, 159 A.L.R. 1336.
[8] Rem. Supp. 1945, § 11201 [P.P.C. § 974-1], in so far as is applicable to the facts of this case, is as follows:
"All property within the jurisdiction of this state, and any interest therein, ... and whether tangible or intangible, which shall pass ... by deed, grant, or sale or gift made or intended to take effect in possession or in enjoyment after death of the grantor or donor, ... shall, for the use of the state, be subject to a tax ..."
The contracts constituted a grant or gift of money made and intended to take effect in possession and enjoyment after the death of the decedent and became subject to taxation upon her death as claimed by respondent.
The appellant asserts that the state insurance commissioner had adopted the view that contracts like those before us constituted insurance and that the premiums collected thereon were regularly subjected to the tax formerly prescribed by Rem. Rev. Stat., § 7071 [P.P.C. § 674-3].
We recognize the rule that an interpretation by an executive department of the state is entitled to great weight, but if it can be said that such interpretation had been placed upon the contracts by the insurance department we must also consider that the inheritance tax and escheat division *870 does not construe the contracts to be for life insurance. It occasionally happens that one may find himself between the fires of two or more governmental agencies and that he may get slightly scorched by each of them. We do not find any inconsistency between the attitudes of the respective departments in view of the statutes under which each is operating. The insurance companies who execute such contracts as a part of their business subject themselves to the police power of the state and become affected by statutes which may be enacted both for regulation and revenue, but this does not prevent the imposition of succession taxes.
The judgment is affirmed.
SCHWELLENBACH, HILL, HAMLEY, and DONWORTH, JJ., concur.
NOTES
[1] Reported in 216 P. (2d) 212.