104 Cal.App.2d 506 (1951)
Estate of GERTRUDE K. BARR, Deceased. THOMAS H. KUCHEL, as State Controller, etc., Appellant,
v.
HELEN BARR McCORMACK, Respondent.
Civ. No. 18349. 
California Court of Appeals. Second Dist., Div. Two. 
May 31, 1951.
 James W. Hickey, Morton L. Barker, Richard K. Yeamans and Vincent J. McMahon for Appellant.
 Calvin H. Conron, Jr., for Respondent.
 WILSON, J.
 This is an appeal by the State Controller from an order sustaining objections to the report of the inheritance tax appraiser. The sole question for determination is whether the proceeds of an annuity contract paid on the death of the annuitant to her named beneficiary are exempt from inheritance tax by reason of the insurance exemption.
 On January 6, 1930, decedent obtained from the Pacific Mutual Life Insurance Company of California a "Retirement Income Bond" which provided for the payment of an income to her of $100 a month commencing at age 65. Annual premiums of $590.40 were paid from that date until the maturity date in 1948, when decedent became 65 and began to draw the $100 monthly payments. On March 18, 1949, Mrs. Barr died and the insurance company paid to her named beneficiary the proceeds of the bond totaling $9,065.30 which sum the inheritance tax appraiser included among the property subject to an inheritance tax.
 The insurance exemption allowed under the inheritance law is set forth in sections 13721, 13723 and 13724 of the Revenue and Taxation Code. [fn. *] *508
 [1] Words in a statute should be given their ordinary meaning unless otherwise clearly intended or indicated. (County of Los Angeles v. Frisbie, 19 Cal.2d 634, 642 [122 P.2d 526].) Insurance has been defined by the Legislature as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Ins. Code, 22.) [2] Basically, an annuity contract is not a life insurance policy. The risk is fundamentally different in the two contracts. [3] In a life insurance policy the risk assumed is to pay upon the assured's death; in a pure annuity contract the risk assumed is to pay as long as the assured may live. (Equitable Life etc. Soc. v. Johnson, 53 Cal.App.2d 49, 57 [127 P.2d 95].) [4] For a contract to be one of insurance it is essential that there be hazard and a shifting of the incidence. If there is no risk, or if there be one and it is not shifted to another or others, there can be no insurance. According to the better view insurance also involves distribution of risk. (California Physicians' Service v. Garrison, 28 Cal.2d 790, 803-4 [172 P.2d 4, 167 A.L.R. 306].) "Basically, insurance is a device which furnishes protection against a risk of loss by distributing the losses of the few among the many who are subject to the same risk ... an annuity is not insurance. Both insurance and annuity contracts are, it is true, gambles against the contingency of death. They are dissimilar, however, in that under an annuity the company's obligation is not to indemnify on the happening of a contingent event causing loss. From the viewpoint of risk, a life insurance policy and an annuity contract are, in fact, diametrically different. Under the former the company will lose in the event of the insured's premature death; under the latter the company will gain. The only risk of the company issuing an annuity, except for the possibility that the annuitant may outlive his expectancy, is the investment risk that the capital may shrink in value or that the *509 return may be less than the amounts payable to the annuitant." (Randolph Paul, Federal Estate and Gift Taxation, vol. I, p. 498.)
 The precise question presented by the instant case has not been decided in California. It has been determined in connection with the federal estate tax exemption of $40,000 on amounts receivable by beneficiaries as insurance under policies taken out by the decedent upon his own life. In Helvering v. LeGierse, 312 U.S. 531, 539 [61 S.Ct. 646, 85 L.Ed. 996], it was held that in order to have the benefit of the exemption "the amounts must be received as the result of a transaction which involved an actual 'insurance risk' at the time the transaction was executed." The decedent in that case at the age of 80 executed two contracts with the same life insurance company. One was an annuity contract entitling her to annual payments for life. The consideration stated for this contract was $4,179. The other was a single premium life insurance policy in the sum of $25,000, payable to her daughter. The premium specified was $22,946. She was not required to pass a physical examination and the insurance policy would not have been issued without the annuity contract. The court held that the amount paid to the daughter on the decedent's death was not receivable as "insurance" so as to permit the exemption. The court stated that the elements of risk- shifting and risk-distributing are essential to a life insurance contract; that when Congress used the words "receivable as insurance" it contemplated amounts received pursuant to a transaction possessing these features; the two contracts must be considered together and when so considered they fail to spell out any element of insurance risk; annuity and insurance are opposites and in this combination the one neutralizes the risk customarily inherent in the other; any risk that the prepayment would earn less than the amount paid to the beneficiary as an annuity was an investment risk and not an insurance risk.
 The same result was reached in Keller v. Commissioner of Internal Revenue, 312 U.S. 543 [61 S.Ct. 651, 85 L.Ed. 1032], in which the facts are substantially the same as the LeGierse case. Also in accord with the Supreme Court decisions are Old Colony Trust Co. v. Commissioner of Internal Revenue, 102 F.2d 380, In re Smiley's Estate, 35 Wn.2d 863 [216 P.2d 212], and In re Atkins' Estate, 129 N.J.Eq. 186 [18 A.2d 45]. In the latter case the court stated, at page 49: "A life insurance policy is a contract whereby the insurance company *510 agrees to insure or indemnify the beneficiary against the death of the insured; it is a contract by which the insured protects the beneficiary against loss accruing by the early or premature death of the insured. The refund annuity contract such as we are here considering is very different. By it the insurance company agrees to repay to the annuitant, in instalments during his life, the amount paid in by him to the company, and if at his death there be a balance unpaid to him, to pay that balance to the person designated by the annuitant to receive the same. It is a contract by which the annuitant protects himself, during his life, by making an investment which will assure the receipt by himself, of an adequate or desired annual sum during his life, with the further assurance that if he should die prematurely, his estate or those whom he desires to receive distribution thereof will not suffer the loss of the repayment he has himself not yet received. In the judgment of this court this is not a life insurance policy."
 [5] In the instant case the retirement income bond was taken out by decedent in 1930, at which time she paid the annual premium of $590.40. She paid the annual premium until 1948 when, at age 65, she was entitled to receive $100 a month for life. From the schedule of death benefits attached to the policy it is evident that the insurance company did not assume any risk of loss on her death. The first year she paid a premium of $490.40 and was guaranteed in case of death $520. The second year the paid premiums totaled $1,180.80 and the death benefit payment amounted to $1,060. After a few years the death benefits slightly exceeded the amount of premiums paid but they would not exceed the amount contributed by decedent plus the income thereon. [6] What the beneficiary received is that portion of decedent's money which had not been repaid to her and whatever risk the insurance company assumed was an investment risk and not an insurance risk.
 [7] Respondent contends that the term "insurance" as used in section 13721 of the Revenue and Taxation Code should be so construed as to include annuities since section 101 of the Insurance Code provides that "Life insurance includes insurance upon the lives of persons or appertaining thereto, and the granting, purchasing, or disposing of annuities." Section 100 of that code divides insurance into twenty classes; section 101 does not purport to define life insurance but states that within that classification shall be included the granting, *511 purchasing and disposing of annuities. The Insurance Code is primarily a regulation and licensing statute whereas the Revenue and Taxation Code, as the name implies, is a revenue statute. The classification of annuities as life insurance for the purposes of the Insurance Code does not require its classification as insurance for the purposes of the Revenue and Taxation Code, the objects of which are totally different.
 [8] The construction of a statute by the officials charged with its administration must be given great weight. (Nelson v. Dean, 27 Cal.2d 873, 880 [168 P.2d 16, 168 A.L.R. 467].) [9] Since the enactment of the insurance exemption in 1935 the controller has construed annuity contracts as not being within the scope of the insurance exemption. Section 719 of the Inheritance Tax Rules and Regulations (Title 18 of the Administrative Code) provides: "The right of any beneficiary to the balance payable under a refund annuity contract upon the death of the annuitant constitutes a transfer subject to the Inheritance Tax Law." Section 797 of those rules provides in part: "It is to be noted that an annuity contract is not a life insurance policy. Consequently the exemption mentioned in section 677 is not allowable on any payment made under any such contract." Section 677 provides: "... The first $50,000 of proceeds of any life or accident insurance policy, ... are exempt. ..."
 The construction of the statute by the controller is in accord with the decisions construing the federal statute and with the ordinary meaning given the term "life insurance."
 Reversed with instructions to enter an order fixing the inheritance tax in accordance with the report of the inheritance tax appraiser.
 Moore, P. J., and McComb, J., concurred.
 Section 13723: Except to the extent specified in Section 13724, the payment or right to receive payment of the proceeds of either of the following insurance policies is a transfer subject to this part:
 (a) Any insurance policy issued after June 25, 1935, which is payable to a named beneficiary.
 (b) Any insurance policy issued on or before June 25, 1935, which is payable to a named beneficiary and under which the insured has the right to change the beneficiary or has the right of cash surrender.
 Section 13724: In addition to the exemptions allowed by this part, the payment or right to receive payment of fifty thousand dollars ($50,000) of the proceeds of either of the insurance policies mentioned in Section 13723 is not subject to this part, with the following limitations:
 (a) Where there is more than one policy, whether of the same or a different type, only fifty thousand dollars ($50,000) of the aggregate proceeds is not subject to this part.
 (b) Where there is more than one beneficiary, the fifty thousand dollars ($50,000) shall be prorated among the beneficiaries in proportion to the amount of insurance payable to each.
NOTES
[fn. *] *. Section 13721: "Insurance policy," as used in this article, means a life or accident insurance policy the proceeds of which are payable by reason of the death of the insured.