**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN THE MATTER OF BRUCE EDWARD
HOWARD SIMPSON,

*Debtor.*

BRUCE EDWARD HOWARD SIMPSON,
*Appellant.*

v.

MICHAEL F. BURKART, Trustee,
*Appellee.*

No. 07-15626

BAP No.
EC-06-01198-
DMoPa

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Pappas, Montali, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
October 20, 2008—San Francisco, California

Filed February 23, 2009

Before: J. Clifford Wallace, Sidney R. Thomas, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Thomas

## COUNSEL

H. Lee Horner, Jr., Goldstein, Horner & Horner, Cortaro, Arizona, for the debtor-appellant.

Michael F. Burkart, Chapter 7 Trustee, Carmichael, California, appellee pro se.

## OPINION

THOMAS, Circuit Judge:

Debtor Bruce Simpson claims that his single-premium annuity is exempt property. His bankruptcy trustee objected to the exemption, the bankruptcy court sustained the objection, and the Bankruptcy Appellate Panel ("BAP") affirmed. We conclude that, under the circumstances presented by the case, the annuity does not qualify as exempt property, either as life insurance or as a private retirement account, and we affirm.

## I

Simpson paid his bankruptcy attorney, who also sells financial products, $10,000 for the purchase of a single-premium annuity known as the Keyport Index Multipoint Annuity ("the Keyport Annuity"). Simpson designated himself as the annuity contract owner and the annuitant. He designated his two sons as beneficiaries.

The Keyport Annuity is equity-indexed against the Standard & Poor's 500 Index. Although the annuity's interest rate depends on the performance of stocks in the index, the annuity has a "guaranteed minimum growth" of no less than 1.75% on 90% of the premium paid. The annuity contract states that the annuity is non-qualified for IRS purposes.[1] The annuity has no loan value, so Simpson could not borrow against any part of the principal or accrued interest. The annuity contract provides that Simpson would begin receiving payments on a specified "Income Date." Prior to the Income Date, Simpson could surrender the annuity, but would be assessed an early surrender penalty.

The annuity's promotional materials refer to it as a retirement savings tool with a taxable death benefit. The section entitled "Death Benefit" provides that, if Simpson were to die prior to the Income Date, his beneficiaries could surrender the

---

[1]The Internal Revenue Code classifies annuities as either qualified or non-qualified. A qualified annuity is purchased through an employer-provided retirement plan or an individual retirement plan that meets certain requirements (such as an Individual Retirement Annuity or Simplified Employee Pension Plan). 26 U.S.C.A. §§ 72(d)(1)(G), 4974(c)(2) (2006). For example, an "Individual Retirement Annuity" cannot be transferable, have fixed premiums, or have a premium that exceeds $6000 in any one year. *Id.* § 408(b)(1)-(2) and 219(b)(5)(B). Contributions to a qualified annuity may be deductible from the taxable income of the employee or employer who made the contribution. *Id.* § 219(a). An annuity that does not meet these requirements is non-qualified, and contributions to it are not deductible. *Id.*

annuity without paying the ten percent penalty and would receive the principal, along with all interest accrued up to that point, as if it were fully vested. Alternatively, they could keep the annuity, wait for it to mature, and then receive the payments Simpson would have received.

A few months after purchasing the Keyport Annuity, Simpson filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. He claimed that the Keyport Annuity was exempt under California Civil Procedure Code section 704.115, which pertains to "private retirement plans." Simpson later filed an amended schedule, claiming that the annuity was also exempt under California Civil Procedure Code section 704.100, which pertains to life insurance policies.

The trustee objected to Simpson's claimed exemptions for the Keyport Annuity. At the hearing on the trustee's objection, Simpson testified that he intended the annuity to provide a supplemental retirement income and viewed the annuity as an investment. He also testified that he viewed the annuity as containing a death benefit because of its waived early-surrender penalty and accelerated vesting provisions.

The bankruptcy court sustained the trustee's objections to Simpson's claimed exemptions and froze the annuity pending appeal. Simpson appealed to the BAP, which affirmed. *Simpson v. Burkart (In re Simpson)*, 366 B.R. 64 (9th Cir. B.A.P. 2007). This timely appeal followed.

We independently review a bankruptcy court's decision on appeal from the BAP. *Educ. Credit Mgmt. Corp. v. Nys (In re Nys)*, 446 F.3d 938, 943 (9th Cir. 2006). We review a bankruptcy court's findings of fact for clear error, and review de novo a bankruptcy court's conclusions of law, including statutory interpretations. *Id.*; *DeMassa v. MacIntyre (In re MacIntyre)*, 74 F.3d 186, 187 (9th Cir. 1996).

Whether the exemption statutes at issue apply to annuities is a question of statutory interpretation. *In re MacIntyre*, 74

F.3d at 187. Whether the features of a specific annuity, when considered together with the debtor's intent, demonstrate that the product's primary purpose and effect are life insurance, a retirement plan, or another financial instrument, is a factual determination that we review for clear error. *Jacoway v. Wolfe (In re Jacoway)*, 255 B.R. 234, 237 (9th Cir. B.A.P. 2000).

**[1]** California has enacted legislation "opting out" of the federal bankruptcy exemption scheme provided under 11 U.S.C. § 522. Cal. Civ. Proc. Code § 703.130 (2007). Therefore, California law governs substantive issues regarding claimed exemptions. *Little v. Reaves (In re Reaves)*, 285 F.3d 1152, 1155-56 (9th Cir. 2002).

II

**[2]** The BAP and the bankruptcy court properly rejected Simpson's claim that the Keyport Annuity was exempt life insurance under California Civil Procedure Code section 704.100(a),[2] which provides:

> Unmatured life insurance policies (including endowment and annuity policies), but not the loan value of such policies, are exempt without making a claim.

---

[2]Although the inquiry we describe applies to application of section 704.100 in general, subsections (b) and (c) are not at issue with regard to Simpson's claim. Subsection (b) is irrelevant because the Keyport Annuity has no loan value. *See* Cal. Civ. Proc. Code § 704.100(b) (providing that "[t]he aggregate loan value of unmatured life insurance policies (including endowment and annuity policies) is subject to the enforcement of a money judgment but is exempt in the amount of [$9,700]"). Subsection (c) is irrelevant because Simpson does not argue that the Keyport Annuity is a matured life insurance policy. *See id.* § 704.100(c) (providing that "[b]enefits from matured life insurance policies (including endowment and annuity policies) are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor").

In deciding whether an annuity qualifies as exempt life insurance under California law, we undertake two inquiries. The first is a question of statutory interpretation, that is, whether the claimed statutory exemption includes the asset at issue. *See Lieberman v. Hawkins (In re Lieberman)*, 245 F.3d 1090, 1091 (9th Cir. 2001) ("The scope of an exemption . . . is a question of a law, which we review de novo."). If the statutory exemption categorically includes the questioned asset, then the inquiry is at an end. If the asset is not categorically embraced within the statutory exemption, then the question is whether, as a factual matter, the particular financial instrument qualifies for the exemption.[3]

A

In analyzing § 704.100, we conclude that the section applies categorically only to life insurance and that annuities are not included within the statute's reach. *Bernard v. Coyne (In re Bernard)*, 40 F.3d 1028, 1032 (9th Cir. 1994); *see also Kennedy v. Pikush (In re Pikush)*, 157 B.R. 155, 159 (9th Cir. B.A.P. 1993), *aff'd*, 27 F.3d 386 (9th Cir. 1994).

**[3]** It is true that the statute has an important parenthetical reference to life insurance "including endowment and annuity policies." However, we agree with the BAP's careful statutory analysis in *Pikush* that this phrase "was intended to clarify that life insurance that includes the essential features of an annuity or endowment policy does not lose its exempt character." 157 B.R. at 157. As the BAP noted:

---

[3]To the extent the BAP suggested that the analysis was limited to a factual inquiry reviewed for clear error, it was incorrect. *See Simpson*, 366 B.R. at 70-71 ("Whether an annuity contract qualifies as exempt life insurance under California law is a factual determination that we review under the clearly erroneous standard."). Statutory interpretation and whether a particular policy qualifies as a life insurance policy are questions of law subject to de novo review. We do, however, review factual findings for clear error.

> Had the California legislature intended to create an exemption for all endowment policies and annuity policies, whether or not they are life insurance policies, it presumably would have enacted a statute that exempted "matured life insurance, endowment and annuity policies."

*Id.* at 156.

**[4]** Consistent with this analysis, and with our examination in *Bernard*, we conclude that single-premium annuities are not included categorically within California's statutory life insurance exemption.

B

Because section 704.100 applies only to life insurance, we next consider Simpson's argument that, alternatively, the Keyport Annuity is nonetheless exempt under the statute because it is actually a life insurance policy. After a thorough examination of the record, we conclude that the bankruptcy court did not err in determining that the Keyport Annuity did not constitute life insurance.

**[5]** A single-premium annuity that provides a guaranteed stream of income and has no contingencies that can divest the debtor or his beneficiaries of their right to payment is an investment, not a life insurance policy. *Bernard*, 40 F.3d at 1032; *Pikush*, 157 B.R. at 159. To analyze whether a particular annuity falls within this rule, we examine the non-exclusive factors identified by the BAP in *Turner v. Marshack (In re Turner)*, 186 B.R. 108, 117 (9th Cir. B.A.P. 1995), namely: (1) whether the annuity is truly contingent; (2) whether the debtor can accelerate the maturity date; (3) whether the debtor can borrow against the policy; (4) who owns the policy; (5) whether payment of the premium is consistent with an investment or payment; (6) whether the seller was licensed to sell life insurance in the debtor's state; (7)

what, if any, is the opinion of testifying experts; (8) what provisions of the application are also part of the policy; and (9) whether a life insurance policy in the debtor's state must contain a death benefit.[4] *Id.*

The BAP considered six of these factors and concluded that the Keyport Annuity was not life insurance based on the following findings:

> Unlike a life insurance policy, the payments under the Keyport Annuity are not contingent upon the debtor's life . . . .
>
> . . . The Keyport Annuity does not allow for the debtor to accelerate the maturity date . . . .
>
> The Keyport Annuity . . . does not allow the debtor to borrow against it.[5] . . .

---

[4]Our court in *Turner* did not characterize these factors as either exclusive or required, and neither do we. *See Turner*, 186 B.R. at 117 (describing these questions as "issues which need to be addressed" upon remand to the bankruptcy court for further findings in that specific case).

[5]Section 704.100(a) protects debtors only from having to surrender a life insurance policy for its cash value (often at a significant loss). It does not exempt the policy's loan value. Under section 704.100(b), any loan value above $9700 must be applied to the debtor's debts. Thus, it appears the statute's drafters attempted to balance a debtor's accountability to his creditors against wasteful disposition of his assets.

Although the BAP did not provide a detailed analysis under this factor, presumably it recognized that allowing Simpson to claim the Keyport Annuity as exempt life insurance would contradict that intent. The Keyport Annuity has no loan value, while the surrender value is relatively high — around 90% of the single premium Simpson paid. Applying the life insurance exemption to this annuity would protect Simpson from having to surrender the annuity, even though he could do so without incurring a great loss, while providing no loan value to apply toward Simpson's debts. Such an interpretation would provide a result opposite of that the drafters intended and cannot be deemed logical.

. . . .

. . . [T]he Keyport Annuity is in the nature of an investment . . . [because], "[i]nstead of creating an immediate estate for the benefit of others, the annuitant [reduced his] immediate estate in favor of future contingent income."

. . . .

[S]imply because the Keyport Annuity contains a death benefit does not make it the equivalent of a life insurance policy . . . . These limited death benefits do not change the fundamental purpose of the Keyport Annuity — to provide the debtor with fixed, periodic payments for life or a stated period of time, without requiring his death to trigger Sun Life's obligation to pay.

. . . Sun Life is authorized to sell life insurance . . . [but this is] not dispositive as to whether the annuity contract qualifies as life insurance exempt under California law.

*Simpson*, 366 B.R. at 72-74 (quoting *Payne*, 323 B.R. at 728 (alteration in original omitted)). There is no error in the BAP's conclusions based on the bankruptcy court's findings, which are sufficient to support the conclusion that the Keyport Annuity is not a life insurance policy.[6]

**[6]** Simpson's primary basis for claiming that the Keyport Annuity is life insurance is that it contains a "death benefit."

---

[6]The tax status of the Keyport Annuity's "Death Benefit" is telling. The annuity materials repeatedly state that the death benefit provided to the beneficiaries of the Keyport Annuity is taxable upon receipt. Proceeds paid under a life insurance policy, however, are generally not taxable as income to the recipient. 26 U.S.C.A. § 101 (2006).

However, we agree with the BAP that the waiver of the early-surrender penalty and accelerated vesting of accrued interest provide a death benefit that is "limited" at best, and those features do not change the "fundamental purpose" of the Keyport Annuity. *Id.* at 74.

Although we are not the final authority on California law, there is no indication that the California Supreme Court would decide otherwise. As early as 1951, the California state appellate courts described the key differences between annuities and life insurance and explicitly held the two are not the same. *See Kuchel v. McCormack (In re Barr's Estate)*, 231 P.2d 876, 878-79 (Cal. Ct. App. 1951) (explaining that the risk assumed in an annuity contract is to pay as long as the annuitant lives, whereas the risk in a life insurance contract is to pay upon the insured's death). Nowhere did the court indicate that the presence of a nominal death benefit was dispositive of its analysis.

Finally, we must reject Simpson's argument that the California Insurance Code settles this matter. While he is correct that it defines life insurance to include the granting, purchasing, or disposing of annuities, the California Supreme Court has expressly held that this statutory classification is only for the purpose of regulating annuities under the Insurance Code, but does not require classification of annuities as insurance for other purposes. *Id.* at 879. Thus, this definition is not dispositive here.

C

**[7]** In sum, a single-premium annuity does not qualify categorically as life insurance under California Civil Procedure Code section 704.100(a), and the bankruptcy court did not err in concluding that this particular instrument did not qualify as exempt life insurance under California law.

III

The BAP and the bankruptcy court did not err in concluding that the Keyport Annuity does not qualify as an exempt private retirement plan under California law. In examining this contention, we employ the same analytical framework as applied to the life insurance exemption: we first examine as a matter of statutory interpretation whether the asset qualifies categorically and, if it does not, we then examine as a factual matter whether this particular instrument qualifies as such.[7]

A

[8] The annuity does not qualify categorically as an exempt private retirement plan under California Civil Procedure Code section 704.115(b). That section allows a debtor to shield the assets that he has accumulated in a private retirement plan from the bankruptcy estate. Section 704.115(b) provides:

> All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt.

A "private retirement plan" is not a generic term referring to any retirement plan. Rather, in order to be a "private retirement plan," the asset must meet one of the three possible definitions specified in subsection (a) of the statute:

> (1) Private retirement plans, including, but not limited to, union retirement plans.

> (2) Profit-sharing plans designed and used for retirement purposes.

---

[7]To the extent that the BAP suggested that the review was purely one of fact, it was incorrect.

(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1986.

*Id.* § 704.115(a).

**[9]** The statute does not indicate that whether an asset is "designed and used for retirement purposes" has any bearing on whether it constitutes a "private retirement plan" under section 704.115(b). Rather, if the annuity does not meet any of the statutory definitions for private retirement plan, it is not exempt under the statute. Single-premium annuities do not qualify categorically as private retirement plans under the statute.

**[10]** We reject Simpson's argument that the California Supreme Court would interpret the provision broadly to include assets acquired by the individual outside of an employment-related retirement plan. While the California Supreme Court has not expressly held that the statute limits "private retirement plans" to those "established or maintained" by an employer, it has applied the exemption only to such plans. *See, e.g., Mejia v. Reed*, 74 P.3d 166, 174 (Cal. 2003) (construing the exemption in the context of a formal retirement account accumulated through a medical practice).

**[11]** Because the California Supreme Court has not had occasion to consider this issue, we look to the holdings of California's intermediate appellate courts as indicative of how the highest court would decide this issue. *Klein v. United States*, 537 F.3d 1027, 1032 (9th Cir. 2008). A survey of recent California Court of Appeal cases construing the statute does not reveal a single instance in which that court has interpreted section 704.115(a)(1) to include independent retirement investments. *See, e.g., McMullen v. Haycock*, 54 Cal. Rptr. 3d 660 (Ct. App. 2007) (funds held through an employer); *Schwartzman v. Wilshinsky*, 57 Cal. Rptr. 2d 790 (Ct. App. 1996) (plan established by debtor's employer);

*Yaesu Elecs. Corp. v. Tamura*, 33 Cal. Rptr. 2d 283 (Ct. App. 1994) (funds derived from a "defined benefit pension plan"). Given these holdings, we do not believe that California would conclude that a single-premium annuity would qualify categorically under California law as a private retirement plan.

B

The second question is whether the particular asset, based on the debtor's subjective intent and the product's true nature, demonstrates that it is primarily intended or used for retirement purposes. *Daniel v. Sec. Pac. Nat'l Bank (In re Daniel)*, 771 F.2d 1352, 1356 (9th Cir. 1985). However, the purpose of this inquiry is distinct and limited. It does not allow the debtor to circumvent the statutory definitions and categorize the asset as an exempt private retirement plan. Rather, the inquiry seeks only to determine whether an asset that fits the definition of a "private retirement plan" should nonetheless be *excluded* from exemption because the debtor treats it as something other than a retirement asset. Thus, while the debtor's subjective intent cannot create an exemption, it may take one away. *Id.*

[12] Simpson's sole argument in support of his claimed exemption is that the annuity constitutes a private retirement plan under section 704.115(a)(1), because he subjectively intended to use it as one. As we have noted, a debtor's subjective intent for or use of the asset is irrelevant to this analysis. *Lieberman*, 245 F.3d at 1095. Rather, section 704.115(a)(1) applies only to retirement plans set up by private employers, "not by individuals acting on their own, outside of the employment sphere." *Simpson*, 366 B.R. at 74 (citing *Lieberman*, 245 F.3d at 1093). As we explained in *Lieberman*:

> [T]he legislature intended § 704.115(a)(1) to exempt only retirement plans established or maintained by private employers or employee organizations, such

as unions, not arrangements by individuals to use specified assets for retirement purposes.

245 F.3d at 1095.

[13] The Keyport Annuity was not established for Simpson by an employer. Rather, Simpson purchased it as an individual. Thus, regardless of his intentions, Simpson is not entitled to claim an exemption for the annuity as a private retirement plan under section 704.115(b).

### IV

Because the single-premium annuity does not qualify under California law either as life insurance or a private retirement plan, the BAP and the bankruptcy court correctly concluded that the property was not exempt property under federal bankruptcy law.

**AFFIRMED.**