In re Marsha L. JACOWAY, Debtor.

Marsha L. Jacoway, Appellant,

v.

John M. Wolfe, Chapter 7 Trustee, Appellee.

BAP No. CC–00–1033–PBMo.
Bankruptcy No. SA 99–10487 RA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 20, 2000.

Decided Oct. 30, 2000.

Andrew S. Bisom, Bisom & Cohen, LLP, Irvine, CA, for Marsha L. Jacoway, appellant.

Heidi K. Leanders, Wood, Bohm & Francis, LLP, Irvine, CA, for John M. Wolfe, Ch. 7 Trustee, appellee.

Before PERRIS, BRANDT, and MONTALI, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

Debtor appeals the order sustaining the chapter 7[1] trustee's objection to her claim of exemption in an individual retirement account/annuity (IRA) as a private retirement plan under Cal.Code Civ.Pro. § 704.115(a). The question is whether debtor's receipt of a partial surrender under the IRA necessarily means that the IRA is not exempt. We REVERSE and REMAND.

## FACTS

The facts are not disputed. Debtor worked for a telephone company for 30 years. In 1995, when she was 50 years old, she accepted her employer's offer of early retirement. Debtor received a lump sum of $100,000 from her pension account, which she used to establish an IRA account with an insurance company.[2] The IRA provides that debtor will begin to receive an annuity when she turns 65. Shortly after she established the IRA, debtor elected to receive a partial surrender of $795.93 per month, based on her life expectancy, which will continue until she turns 59 ½ years old.[3] Despite the partial

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. The trustee argues that, contrary to debtor's assertion in her brief, the plan is not ERISA qualified. We will not address this argument,

because it was raised for the first time on appeal.

3. This distribution is exempt from the usual 10% penalty for early withdrawals from qualified retirement plans. *See* 26 U.S.C.

surrender payments made over the last five years, the amount in the IRA has grown from $100,000 to approximately $122,000.

The trustee objected to debtor's claim of exemption in the IRA, arguing that it does not fit within Cal.Code Civ.Pro. § 704.115(a) because the IRA was not designed and has not been used for retirement purposes. The bankruptcy court agreed, and debtor appeals.

## ISSUE

Whether the bankruptcy court erred in sustaining the trustee's objection to debtor's claim of exemption in her IRA.

## STANDARD OF REVIEW

■■■ We review questions of statutory interpretation *de novo*. *In re Bloom*, 839 F.2d 1376 (9th Cir.1988). Where the facts are established and the rule of law is undisputed, whether the facts satisfy the legal rule is a mixed question of law and fact that we review *de novo*. *In re Spenler*, 212 B.R. 625 (9th Cir. BAP 1997); *Schwartzman v. Wilshinsky*, 50 Cal. App.4th 619, 57 Cal.Rptr.2d 790 (1996). Whether a plan is designed and used for retirement purposes is a question of fact that we review for clear error. *In re Phillips*, 218 B.R. 520 (N.D.Cal.1998); *Yaesu Electronics Corp. v. Tamura*, 28 Cal.App.4th 8, 33 Cal.Rptr.2d 283 (1994).

## DISCUSSION

■■■ A debtor in bankruptcy is entitled to exempt certain assets from the bankruptcy estate. 11 U.S.C. §§ 522, 541. California has "opted out" of the federal exemption scheme, so California law governs whether debtor's IRA is exempt. *See* Cal.Code Civ.Pro. § 703.130; *In re Turner*, 186 B.R. 108, 113 (9th Cir. BAP 1995). Debtor claimed her IRA account as ex-

empt under Cal.Code Civ.Pro. § 704.115, which provides:

> (a) As used in this section, "private retirement plan" means:
>
> (1) Private retirement plans, including, but not limited to, union retirement plans.
>
> (2) Profit-sharing plans designed and used for retirement purposes.
>
> (3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1986, as amended, including individual retirement accounts qualified under Section 408 or 408A of that code, to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.
>
> (b) All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt.

The trustee objected to the exemption and argued to the bankruptcy court that debtor's IRA was not designed and used for retirement purposes because debtor had arranged for a partial surrender within a few days of setting up the IRA and she has received $795.93 per month since November 1, 1995, for a total of $37,408.71 by October 1999. Debtor was 50 years old when she began receiving the partial surrender, and continued working. Thus, the monthly payments supplemented her income from employment. The trustee relies heavily on *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), and *Bloom*, 839 F.2d 1376, for the proposition that, when a debtor takes withdrawals from a purported retirement plan rather than taking legitimate loans, the plan is not designed nor used for

---

§ 72(t)(2)(A)(iv) (distributions that are "part of a series of substantially equal periodic payments ... made for the life (or life expectancy) of the employee ..." are not subject to the

early distribution penalty). It is based on an assumed effective interest rate of 9% and amortized over debtor's life expectancy.

retirement purposes. Debtor argues that the court erred in focusing solely on the fact that she took partial withdrawals from the account. She asserts that the partial withdrawal of funds under circumstances allowed by the Internal Revenue Code does not destroy the retirement purpose of her IRA.[4]

In *Daniel*, the debtor was a physician who was employed by his own professional corporation. The corporation formed a pension and profit-sharing plan, which the debtor managed and controlled. The debtor took an unsecured loan of $75,000 from the plan, which represented most of the debtor's interest in the plan. Although he agreed to repay the loan at 10% interest, when the loan became due, the debtor rolled it over to another promissory note and never made any payments. Two weeks before the debtor filed his bankruptcy petition, he caused his corporation to contribute $39,000 to the plan, which was all of the corporation's available cash.

Considering the claim of exemption in the plan under California's predecessor to § 704.115, which contained provisions similar to those contained in the current statute, the court concluded that the debtor had not used the plan principally for retirement purposes. The court noted that the debtor's unsecured $75,000 loan to himself from the plan, which depleted nearly the entire value of the plan, was "more a withdrawal than a loan, thereby negating a retirement 'use' purpose." 771 F.2d at 1357. The court continued:

> If debtor's real concern had been retirement, rather than buying a residence with pre-tax dollars, he would surely have invested the funds in assets which would yield a competitive money market

return, would provide adequate security, and would preserve and enhance the capital of the plan.

*Id.* The court also determined that "the transfer of $39,000 from the corporation to the plan on the eve of bankruptcy further demonstrates that the debtor's use of the plan was not for retirement purposes." *Id.*

The court concluded:

> [T]he plan essentially operated to meet debtor's short-term personal needs by lending money or shielding and hiding funds from creditors. Moreover, the debtor has failed to show how his transactions with the plan, by virtue of his role as trustee, were in furtherance of legitimate long-term retirement purposes.

*Id.* at 1358. Thus, "the lower courts were amply justified in finding that the debtor's plan was not principally 'used for retirement purposes[.]'" *Id.*

In *Bloom*, the debtor had also taken loans from her private retirement and profit sharing plans, which had been created by the medical corporation of which she was a 50% owner. At the time she filed bankruptcy, the debtor's interest in the plans was approximately $475,000. This amount included $300,000 the debtor owed on promissory notes for loans she had taken from the plan. The debtor had made interest payments on the loans, but had not repaid any principal. The court concluded that "Bloom's plans were not so abused as to lose their retirement purpose," based on four circumstances. 839 F.2d at 1379.

---

4. The parties assume that an IRA must be designed and used for retirement purposes to meet the requirements for exemption in Cal. Code Civ.Pro. § 704.115(b). We do not address the question of whether an IRA is exempt only if it is designed and used for retirement purposes, because neither party raised the issue in the bankruptcy court or raises it on appeal. The phrase "designed and used for retirement purposes" is included in para-

graph (2) of § 704.115(a), referring to profit-sharing plans, but is not included in either paragraph (1) or (3). In *Bloom*, the Ninth Circuit considered whether that phrase applied as well to plans included in paragraph (1) and concluded that it does. It does not necessarily follow that the phrase also applies to IRAs, which are included in paragraph (3) and are subject to express limitations set out in that paragraph.

First, Bloom followed the procedures set out in the Trust Agreement for obtaining loans. Second, Bloom was charged a reasonable rate of interest on the loans. Third, she regularly made the interest payments due, over a period of several years. These three factors indicate that, unlike the debtor in *Daniel*, the transactions were not "more a withdrawal than a loan." *Daniel*, 771 F.2d at 1357. Fourth, there is no indication that Bloom used the plan to hide otherwise ineligible assets from bankruptcy administration, as did the debtor in *Daniel* . . . .

In sum, we believe that Bloom did not cease to treat her plans as retirement plans.

*Id.*

The trustee focuses on the language in the two cases referring to withdrawals as opposed to legitimate loans, arguing that when a debtor takes outright withdrawals from a plan, those withdrawals defeat the retirement purpose, because the withdrawals do not further long-term retirement goals. Debtor argues that her monthly withdrawals are, in light of the value in the plan, de minimis and do not defeat the retirement purpose of the plan.

 The trustee acknowledged at oral argument that a retirement account need not be used solely for retirement purposes to be exempt under § 704.115, but must be used primarily for retirement purposes. We agree. As the court said in *Daniel*, the question is whether the plan is used *principally* for retirement purposes. 771

F.2d at 1357–58. There is no indication in this case that the bankruptcy court took into consideration that the plan could have two purposes, one to supplement current income and the other to provide for retirement. Particularly in light of the liberal construction given to exemption statutes, *see Spencer v. Lowery*, 235 Cal.App.3d 1636, 1639, 1 Cal.Rptr.2d 795 (1991), where a plan is designed and used for dual purposes, the court should consider whether the principal purpose is to provide for retirement or to provide for current needs.

 In making that determination, the court should consider all factors.

All factors are relevant; but no one is dispositive. Rather, all of them must be considered in the light of the fundamental inquiry—whether the plan was designed and used for a retirement purpose.

*Bloom*, 839 F.2d at 1379. Those factors include, without limitation, whether withdrawals or loans were made following the procedures set out in the plan,[5] *Bloom*, 839 F.2d at 1379, *In re Witwer*, 148 B.R. 930, 940 (Bankr.C.D.Cal.1992), *aff'd*, 163 B.R. 614 (9th Cir. BAP 1994) (table), whether the debtor "used the plan to hide otherwise ineligible assets from bankruptcy administration," *Bloom*, 839 F.2d at 1379; *Witwer*, 148 B.R. at 941, or from creditors, *Daniel*, 771 F.2d at 1358; *Phillips*, 218 B.R. at 523, whether the withdrawals or loans "benefited the plan's retirement purpose" by "[preserving and enhancing] the capital of the plan," *Daniel*, 771 F.2d at 1357, and whether any withdrawals dimin-

---

**5.** The trustee argues that whether loans or withdrawals are made in compliance with the terms of the plan and whether they are permissible under the Internal Revenue Code are irrelevant. We disagree. Loans or withdrawals made in compliance with the terms of the plan and the Internal Revenue Code are more likely to indicate a retirement purpose than loans or withdrawals that do not comply, because they indicate an intent to preserve the original protections provided for retirement plans. It is particularly relevant that withdrawals qualify for the exemption from the 10% penalty on early withdrawals under

Internal Revenue Code § 72(t)(2)(A)(iv), because that exemption recognizes that such withdrawals are essentially "retirement surrogates." Richard L. Kaplan, "Retirement Funding and the Curious Evolution of Individual Retirement Accounts," 7 Elder L.J. 283, 293 (1999). The premise is that there will be "a series of payments to provide regular retirement income to the employee over the employee's life." James E. Holland, Jr., "Substantially Equal Periodic Payments Under Section 72(t)," Q239 ALI–ABA 211, 213 (1995).

ished or will diminish the assets in the plan to such an extent that they are inconsistent with the majority of the assets being used for long-term retirement purposes. *See id.* at 1358; *Witwer*, 148 B.R. at 941.

"The purpose of the section 704.115 exemption for the corpus of private retirement plans is to safeguard a stream of income for retirees at the expense of bankruptcy creditors." *In re MacIntyre*, 74 F.3d 186, 188 (9th Cir.1996). In light of that purpose, the mere fact that withdrawals were or are being made is not sufficient to show that a plan does not have long-term retirement as its principal purpose. If the primary purpose is to provide income for a debtor in retirement, the assets in the plan should be exempt under § 704.115. Otherwise, even a de minimis depletion of the plan assets would destroy the exemption, which would be contrary to the purpose of the exemption statute to preserve income for retirees.

In this case, debtor stated in her declaration that the IRA account "was established to provide me with a source of income during my retirement and I have never intentionally used it in a manner which I thought was inconsistent with this purpose." Declaration Supporting Debt-

or's Opposition to Objection to Debtor's Claim of Exemption. The withdrawals were designed to comply with Internal Revenue requirements intended to encourage retirement savings and are based on a calculation that would result in payments over debtor's lifetime, including after retirement. The original fund has grown notwithstanding the early withdrawals.

Because the bankruptcy court failed to consider whether the principal, as opposed to the only, purpose of debtor's IRA was to provide for her retirement and to consider all of the relevant factors in making that determination, we reverse and remand for the bankruptcy court to assess the facts in light of the correct standard and to consider all of the relevant circumstances.[6]

### CONCLUSION

The bankruptcy court failed to consider whether debtor's IRA was principally designed and used for retirement purposes and failed to consider all of the relevant factors. Therefore, we REVERSE and REMAND.

---

**6.** At oral argument there was some discussion about whether the payments debtor is currently receiving and will receive until she is 59 ½ years old should be exempt. The statute provides that "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt." Cal. Code Civ.Pro. § 704.115(b). Subsection (e) of § 704.115 provides:

Notwithstanding subdivisions (b) and (d), except as provided in subdivision (f), the amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires. In determining the amount to be

exempt under this subdivision, the court shall allow the judgment debtor such additional amount as is necessary to pay any federal and state income taxes payable as a result of the applying of an amount described in paragraph (3) of subdivision (a) to the satisfaction of the money judgment.
Subsection (f) provides, as relevant:

Where the amounts described in paragraph (3) of subdivision (a) are payable periodically, the amount of the periodic payment that may be applied to the satisfaction of a money judgment is the amount that may be withheld from a like amount of earnings under Chapter 5 (commencing with Section 706.010) (Wage Garnishment Law).
We need not decide whether, if the bankruptcy court concludes that the IRA is exempt, the exemption in the periodic payments would be limited by subsection (e), because the trustee did not raise that argument at the bankruptcy court.