**In re Bruce Edward Howard SIMPSON, Debtor.**

**Bruce Edward Howard Simpson, Appellant,**

v.

**Michael F. Burkart, Chapter 7 Trustee, Appellee.**

BAP No. EC-06-1198-DMoPa.
Bankruptcy No. 05-31811.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 21, 2007.

Filed March 8, 2007.

provisions to debtor's annuity contract presented mixed questions of law and fact subject to de novo review by bankruptcy appellate panel (BAP).

tinctly argued in an appellant's opening brief.

H. Lee Horner, Horner & Horner, Sacramento, CA, for Bruce Simpson.

Michael F. Burkart, Carmichael, CA, Chapter 7 Trustee, Pro se.

Before: DUNN, MONTALI and PAPPAS, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The debtor, Bruce Edward Howard Simpson ("the debtor"), appeals the bankruptcy court's order sustaining the trustee's objection to the debtor's claimed exemptions in an annuity contract under Cal. Code Civ. Proc. ("C.C.P.") §§ 704.100 and 704.115. For the reasons set forth below, we AFFIRM.

## I.  FACTS

A.  *The Keyport Annuity*

The facts are undisputed. On or about July 4, 2005 (but effective June 30, 2005), the debtor purchased a single-premium annuity contract, known as the Keyport Index Multipoint Annuity (the "Keyport Annuity" or "annuity contract"), from Sun Life Financial ("Sun Life"), for $10,000.[1] Exhibit A, Confirmation Letter at 1–2; Exhibit A, Certificate at 3.[2] The debtor is

1.  The debtor purchased the Keyport Annuity through his bankruptcy attorney, who was also his financial advisor.

2.  At the March 15, 2006, hearing, counsel for the debtor presented three exhibits marked Exhibit A, Exhibit B, and Exhibit C, respectively. Counsel for the debtor characterized Exhibit A as the annuity contract, Exhibit B as the "client guide," and Exhibit C as a "presale document" or brochure with respect to the Keyport Annuity.

Exhibit A is comprised of two letters, both dated July 4, 2005, the annuity contract certificate, called the "Group Deferred Equity Indexed Annuity Certificate/Single Premium Payment/Nonparticipating–No Dividends" ("Certificate"), and a document titled, "Cali-

fornia Guaranty Association Notice" ("Notice"), which the bankruptcy court found did not constitute a part of the annuity contract. The first letter is a confirmation of the annuity contract and highlights certain provisions of the annuity contract ("Confirmation Letter"). The second letter is a letter of introduction, welcoming the debtor as the annuity contract owner ("Welcome Letter").

Exhibit B, titled "Client Guide" ("Client Guide"), has various headings to which we will refer parenthetically as a means of further specifying and clarifying citations. Exhibit C is titled "Keyport Index Multipoint" ("Brochure"), which also has various headings and subheadings to which we will refer parenthetically.

both the annuitant and the annuity contract owner, and his two sons are the designated beneficiaries under the annuity contract. Exhibit A, Certificate at 3.

The Keyport Annuity is an equity-indexed annuity, which earns interest on the principal based on the performance of a certain index of stocks, specifically, the S & P 500. Exhibit B, Client Guide at 2 ("Link to an Equity Index"). Simply put, when the value of the stocks in the S & P 500 Index increases, the interest earnings on the principal increase as well. If the S & P 500 Index drops, however, the annuity contract puts a floor on potential losses so that the annuitant or his beneficiaries would receive no less than ninety percent (90%) of the principal, plus a return of "one-and-three-quarters percent on 90 percent of the premium paid." Tr. of March 15, 2006 Hr'g at 30:25, 30:1–2.

The Keyport Annuity is a non-qualified plan for purposes of the Internal Revenue Code of 1986, as amended ("IRC"). The annuity payments are to commence on June 30, 2043 (the "Income Date"), as long as the annuity contract is still in force. The Income Date for the debtor is "the anniversary date of the Annuitant's *95th* birthday." Exhibit A, Certificate at 2–3, 10 (emphasis added). However, interest earnings on the annuity contract principal are fully vested and accessible for withdrawal by the annuity contract owner following the tenth anniversary of the annuity contract's effective date. Exhibit C, Brochure at 2 ("How to Access Your Money: Vesting Schedule").

The annuity contract also contains a death benefit provision. Upon the death of the debtor, if his beneficiaries surrender the annuity contract within ninety days following his death, the beneficiaries would receive the entire principal plus all interest accrued, as fully vested, through the anniversary date of the annuity contract immediately preceding the debtor's death. If the annuity contract is not surrendered during the ninety-day period, the designated beneficiaries could exercise any and all ownership rights in the annuity contract, including the right to make full or partial surrenders, for a five-year period. Exhibit A, Certificate at 9. At the end of the five-year period, the annuity contract would automatically terminate, and the designated beneficiaries would receive the surrender value of the annuity contract at that time. *Id.*

The debtor has the right to assign the annuity contract at any time while it is in force. Exhibit A, Certificate at 15. However, no beneficiary or payee under the annuity contract can assign any payments thereunder before they become due. Exhibit A, Certificate at 16. To the extent allowable by law, none of the annuity payments would be subject to the debts of any beneficiary or payee or to any judicial process for payment of such debts. *Id.*

B. *The Debtor's Claimed Exemptions in the Keyport Annuity*

On September 16, 2005, the debtor filed for bankruptcy relief under chapter 7.[3] Among the assets identified on the original Schedule B, the debtor listed the Keyport Annuity, with a market value of $10,000. On his original Schedule C, the debtor claimed an exemption in the entire value of

---

**3.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 ("BAPCPA"), as the debtor's chapter 7 case was filed in advance of the BAPCPA effective date.

the Keyport Annuity pursuant to C.C.P. § 704.115.[4]

The first § 341(a) meeting took place on October 25, 2005, and, after several continuances, concluded on January 4, 2006. On October 28, 2005, the debtor amended his Schedule C, claiming an exemption in the Keyport Annuity under C.C.P. § 704.100.[5] On February 21, 2006, the debtor amended his Schedule C a final time, claiming exemptions in the Keyport Annuity under both C.C.P. §§ 704.100 and 704.115.

### C. *The Trustee's Objection to the Claimed Exemptions*

On January 20, 2006, the trustee filed an objection to the exemptions claimed by the debtor in the Keyport Annuity and a motion for turnover thereof ("Objection"). On February 14, 2006, the debtor filed an opposition to the Objection, arguing that the Keyport Annuity had certain characteristics inherent in life insurance policies, thereby qualifying it for exemption under C.C.P. § 704.100. The debtor also contended that the Keyport Annuity qualified as an exempt private retirement plan within the meaning of C.C.P. § 704.115, because he intended to establish the Keyport Annuity as such.

On March 15, 2006, the bankruptcy court held a hearing on the Objection. At the hearing, the debtor testified that he "entered into the [annuity contract] in order to supplement retirement assistance down the road." He also testified that he viewed the annuity contract as an investment, with the amount of gain subject to fluctuation, though he understood he would not lose any principal as long as he did not surrender the annuity contract during the first ten years following its effective date.

The debtor further testified that he was receiving Social Security disability benefits and that he was a retired insurance salesman, though he worked occasionally part-time. He stated that he did not have a "structured retirement program of any kind," although he did have an IRA. He also testified that he understood that the

---

**4.** C.C.P. § 704.115(a) defines the following as "private retirement plans" qualifying for exemption:

> (1) Private retirement plans, including, but not limited to, union retirement plans.
> (2) Profit-sharing plans designed and used for retirement purposes.
> (3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1986, as amended, including individual retirement accounts qualified under Section 408 or 408(A) of that code, to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.

C.C.P. § 704.115(b) provides that "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt." However, under C.C.P. § 704.115(e), the amounts described in C.C.P. § 704.115(a)(3) "are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor...."

**5.** C.C.P. § 704.100 provides, in relevant part:

> (a) Unmatured life insurance policies (including endowment and annuity policies), but not the loan value of such policies, are exempt without making a claim.
> (b) The aggregate loan value of unmatured life insurance policies (including endowment and annuity policies) is subject to the enforcement of a money judgment but is exempt in the amount of nine thousand seven hundred dollars ($9,700)....
> (c) Benefits from matured life insurance policies (including endowment and annuity policies) are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor.

Keyport Annuity was not a "qualified contract."

After listening to the debtor's testimony, the bankruptcy court allowed the parties to brief the issues further and continued the hearing to May 9, 2006, to hear closing arguments and to make its findings of fact and conclusions of law orally on the record. The bankruptcy court also charged the debtor, as the party asserting the claim of exemption, with the burden of proof to establish his right to an exemption in the annuity contract. Neither of the parties contested the bankruptcy court's allocation of the burden of proof.

At the May 9, 2006, hearing, after highlighting the pertinent provisions of the annuity contract orally on the record, and applying the prevailing case law to the facts at hand,[6] the bankruptcy court found that the debtor could not claim an exemption in the Keyport Annuity under either C.C.P. § 704.100 or § 704.115, and sustained the Objection. On May 16, 2006, the bankruptcy court entered its order thereon.

The debtor timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2). We have jurisdiction under 28 U.S.C. § 158(b).

## III. ISSUES

(1) Whether the bankruptcy court erred in sustaining the trustee's objection to the debtor's claimed exemptions in the Keyport Annuity by finding that it did not qualify as life insurance or as a private retirement plan under C.C.P. §§ 704.100 and 704.115, respectively.

(2) Whether we may impose sanctions on the debtor and his bankruptcy attorney for bringing a frivolous appeal.

## IV. STANDARDS OF REVIEW

We review questions of statutory interpretation de novo. *DeMassa v. MacIntyre (In re MacIntyre)*, 74 F.3d 186, 187 (9th Cir.1996). Thus, we review the scope of an exemption under California law de novo.[7] *Estate of Short v. Payne (In re Payne)*, 323 B.R. 723, 727 (9th Cir. BAP 2005). We also review interpretations of contract law de novo. *Id.*

Interpreting the scope of C.C.P. §§ 704.100 and 704.115 and applying those statutory provisions with respect to the annuity contract present mixed questions of law and fact. "Where the facts are established and the rule of law is undisputed, whether the facts satisfy the legal rule is a mixed question of law and fact that we review de novo." *Jacoway v. Wolfe (In re Jacoway)*, 255 B.R. 234, 237 (9th Cir. BAP 2000).

Whether an annuity qualifies as exempt life insurance under California law is a factual determination that we review under the clearly erroneous standard. *Id.* Whether an annuity contract is designed

6. Specifically, the bankruptcy court relied on three cases: *Kennedy v. Pikush (In re Pikush)*, 157 B.R. 155 (9th Cir. BAP 1993), *aff'd* 27 F.3d 386 (9th Cir.1994); *Bernard v. Coyne (In re Bernard)*, 40 F.3d 1028 (9th Cir.1994); and *DeMassa v. MacIntyre (In re MacIntyre)*, 74 F.3d 186 (9th Cir.1996).

7. The debtor earlier, before the motions panel, requested certification of this appeal to the California Supreme Court. The motions pan-

el denied his request pursuant to California Rule of Court 29.8, which does not include the Bankruptcy Appellate Panel as one of the designated courts permitted to make such a certification. The debtor brings this issue again before us in the briefs, but merely to reserve his right to renew his motion for certification before the Ninth Circuit, should this appeal be brought before it.

and used for retirement purposes, qualifying it for exemption under California law, is a factual determination that we review under the clearly erroneous standard. *See Jacoway*, 255 B.R. at 237 (stating that determining whether a private retirement plan is designed and used for retirement purposes is a question of fact reviewed for clear error). "A factual determination is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed." *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 99 (9th Cir. BAP 2006)(citing *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

## V. DISCUSSION

### A. *The Bankruptcy Court Did Not Err in Sustaining the Objection*

#### 1. *The Keyport Annuity is not exempt as life insurance.*

■ The debtor maintains that the Keyport Annuity qualifies as life insurance and is thus exempt under C.C.P. § 704.100 because it contains certain features of a life insurance policy. The debtor primarily relies on two aspects of the Keyport Annuity in asserting that it qualifies for exemption as life insurance: 1) the guaranteed return of the principal, and 2) the death benefit provision.

■ It is well-established within the Ninth Circuit that C.C.P. § 704.100 applies only to life insurance policies and not to annuities. *Kennedy v. Pikush (In re Pikush)*, 157 B.R. 155, 159 (9th Cir.BAP1993)(determining that "the exemption provided by [§ ] 704.100(c) is limited to life insurance policies"), *aff'd* 27 F.3d 386 (9th Cir.1994); *Bernard v. Coyne (In re Bernard)*, 40 F.3d 1028, 1032 (9th Cir.1994)(stating that C.C.P. § 704.100 only applies to life insurance policies)(quoting *Pikush*, 157 B.R. at 159); *Estate of Short v. Payne (In re Payne)*, 323 B.R. 723, 727 (9th Cir. BAP 2005)(stating that "[t]he Ninth Circuit has held that [C.C.P.] § 704.100(c)'s parenthetical reference to 'endowment and annuity policies' does not create an independent exemption for endowments and annuities in general."); *Turner v. Marshack (In re Turner)*, 186 B.R. 108, 117 (9th Cir.BAP1995)(stating that under *Pikush*, in order "to qualify for an exemption under [C.C.P.] § 704.100, the policy must be life insurance.").

■ Generally, life insurance policies are contracts whereby the insurer "undertakes to indemnify the insured against loss, damage or liability arising from a contingent or unknown event" (i.e., the death of the insured). *Pikush*, 157 B.R. at 156 (quoting Cal. Ins.Code § 22 (West 1972)). Annuity contracts, in contrast, provide the annuitant with the right to receive fixed, periodic payments, either in perpetuity, for life or over a stated period of time. *Id.* (citing California Insurance Law & Practice § 20.20[2][a] (Matthew Bender 1993)).

It has been acknowledged that similarities exist between life insurance policies and annuity contracts. *Payne*, 323 B.R. at 729 (noting that authorities agree that annuity contracts and life insurance policies have much in common); *Turner*, 186 B.R. at 117 (acknowledging that, as there are annuities that appertain to human life and those that do not, certain annuities contingent upon human life may be exempt under § 704.100).

■ Both life insurance policies and annuity contracts may be used for investment purposes. *Payne*, 323 B.R. at 729 (citing *Turner*, 186 B.R. at 115). Annuity contracts also may involve risks, contingencies, or unknown events, making them the functional equivalents of life insurance

policies. *Payne*, 323 B.R. at 729 (citations omitted). In addition, "[a]s with life insurance, the uncertainty facing the annuitant [under an annuity contract] is the length of his or her life," though the risks involved in an annuity contract versus a life insurance policy are usually different. *Id.* " 'With an annuity, the risk insured is that death will be postponed; with life insurance, the risk insured is that death will be premature.' " *Id.* (quoting California Insurance Law & Practice § 20.20[2][b] (Matthew Bender 2004)).

■ Given these similarities, a court must, on a case-by-case basis, make a factual determination as to whether an annuity contract constitutes an investment or life insurance when deciding whether the exemption of C.C.P. § 704.100 applies. *Payne*, 323 B.R. at 729 (citing *Turner*, 186 B.R. at 117). In making its determination, the court should consider a number of factors, including: 1) whether the annuity is truly contingent; 2) whether the debtor can accelerate the maturity date; 3) whether the debtor can borrow against the policy; 4) who owns the policy; 5) whether the payment of the premium was consistent with an investment or a payment for insurance coverage; 6) whether the issuer of the annuity was licensed to sell life insurance in California; 7) what are the opinions of experts; 8) what provisions of the application are also part of the policy; and 9) whether life insurance in California must contain a death benefit.[8] *Payne*, 323 B.R. at 729-30 (quoting *Turner*, 186 B.R. at 117). These factors are not exclusive. *See Turner*, 186 B.R. at 117.

Applying the relevant *Turner* factors to the facts at hand, we agree with the bankruptcy court that the Keyport Annuity is not a life insurance policy.

Unlike a life insurance policy, the payments under the Keyport Annuity are not contingent upon the debtor's life. The annuity contract specifically states that "[i]f this certificate is in force [on the Income Date], [Sun Life] will begin making income payments to the Annuitant [and] will make such payments according to the terms of the [annuity contract]." Exhibit A, Certificate at 1. The only condition for payment is that the annuity contract remain in force at the time the payments are due to begin. As long as this condition is met, Sun Life will pay the annuity, even if the annuitant dies prior to the payment start date. In such circumstance, the payments go to the designated beneficiaries listed in the annuity contract—in this case, the debtor's sons. There is nothing in this language or anywhere else in the annuity contract indicating that Sun Life's obligation to pay the annuity is contingent upon the debtor's life; once the annuity contract becomes effective, Sun Life's obligation to pay is absolute.

In addition, the Keyport Annuity does not allow for the debtor to accelerate the maturity date. The debtor may take distributions of accrued interest, as fully vested, following the tenth anniversary of the effective date of the annuity contract and may fully or partially surrender the annuity contract prior to the Income Date, but the debtor cannot necessarily retrieve the entire principal and interest accrued thereon. Should the debtor decide to surrender the annuity contract while it is in force and before the Income Date, depending on the time frame in which he makes his decision, the debtor should receive the invested principal, plus a variable return. However, the payment start date, June 30, 2043,

---

**8.** The *Payne* court noted that the last factor was intended to look at the risks involved in the transaction, given the inherent differences between annuity contracts and life insurance policies. *Id.* at 730 n. 7.

remains the same, and the debtor will not receive any annuity payments until that date.

The Keyport Annuity also does not allow the debtor to borrow against it. It allows the debtor, who owns it, to *assign* the annuity contract at any time while it is in force, but the debtor cannot take out a loan against any future annuity payments. In fact, the annuity contract specifically provides that, to the extent allowable by law, none of the payments will be subject to the debts of any beneficiary or payee.

The debtor argues that because return of the principal is guaranteed, the annuity contract is not an investment. He asserts that, unlike a variable annuity for which the annuitant assumes "all market risk of possible loss of principal," under the Keyport Annuity, Sun Life assumes all the investment risk and promises to pay at least ninety percent (90%) of the initial investment amount, as well as a minimum small percentage return, if the value of the stocks in the S & P 500 falls.

■ Contrary to the debtor's assertion, the Keyport Annuity is in the nature of an investment. An annuity contract qualifies as an investment if, " '[i]nstead of creating an immediate estate for the benefit of others, the annuitant [reduces] the annuitant's immediate estate in favor of future contingent income.' " *Payne*, 323 B.R. at 728 (quoting California Insurance Law & Practice § 20.20[2][a] (Matthew Bender 2004)). Here, the Keyport Annuity provides a future contingent income stream based on an initial investment of $10,000, with a return tied to the performance of S & P 500 stocks.

■ If the primary purpose of an annuity is investment, then the annuity does not qualify as exempt life insurance under C.C.P. § 704.100. *Payne*, 323 B.R. at 731. The debtor testified that he viewed the annuity as an investment, with the amount of gain subject to fluctuation. Sun Life even describes the Keyport Annuity as an "investment." Exhibit A, Welcome Letter at 1. Thus, it is clear, from the nature of the annuity contract, as well as the debtor's own testimony, that the primary purpose of the Keyport Annuity is investment.

Further, as the *Payne* court points out, though an annuity may exhibit some of the same features as a life insurance policy, such common features are not conclusive. *See id.* at 729 (stating that "where the annuity contains some attributes of insurance and some of investment, consideration of [whether the payment of the premium was consistent with an investment or a payment for insurance] must include a determination of the primary purpose of the annuity.").

■ The debtor further contends that the death benefit provision in the Keyport Annuity qualifies it as a life insurance policy. However, simply because the Keyport Annuity contains a death benefit does not make it the equivalent of a life insurance policy. In fact, compared to life insurance death benefits that typically are payable in full to the beneficiary on the death of the insured, the death benefit under the annuity contract is limited: the beneficiaries can surrender the annuity contract within ninety days following the debtor's death and receive the entire principal ($10,000) plus all accrued interest as fully vested. If the ninety-day surrender option is not exercised, the annuity contract "can continue for up to five years from the date of death," at which point, the Surrender Value under the annuity contract is paid to the designated beneficiaries. Exhibit A, Certificate at 9. These limited death benefits do not change the fundamental purpose of the Keyport Annuity—to provide the debtor with fixed, periodic payments for life or a stated period of time, without

requiring his death to trigger Sun Life's obligation to pay.

██ In asserting that the Keyport Annuity qualifies as life insurance, the debtor also relies on the facts that Sun Life, which sold and issued the annuity contract, is an entity licensed to sell and issue life insurance and thus regulated by the California insurance commissioner, and that the California Life and Health Insurance Guaranty Association guarantees the annuity contract as an insurance contract. Even though Sun Life is authorized to sell life insurance and is protected by a guaranty from an insurance guaranty association, these facts are not dispositive as to whether the annuity contract qualifies as life insurance exempt under California law. They are only factors to consider in our determination. *See Turner*, 186 B.R. at 117 (listing one of nine nonexclusive factors to take into consideration as whether the issuer is licensed to sell life insurance in California).

Considering all relevant factors present in this case, we agree with the bankruptcy court that the Keyport Annuity does not qualify as a life insurance policy, and accordingly, it is not exempt under C.C.P. § 704.100.

### 2. *The Keyport Annuity Is Not Exempt as a Private Retirement Plan.*

The debtor argues, alternatively, that the Keyport Annuity qualifies as a private retirement plan exempt under C.C.P. § 704.115. The debtor asserts that he purchased the Keyport Annuity with the intent to use it as a "private retirement vehicle." The debtor further contends that the Keyport Annuity even presents itself as a private retirement plan, as exhibited in the Client Guide and in the Brochure.

██ Though the debtor does not specify under which subsection of C.C.P. § 704.115 he claims an exemption, the Keyport Annuity does not constitute a private retirement plan pursuant to C.C.P. § 704.115(a)(1). Just because the debtor or his bankruptcy attorney characterizes the Keyport Annuity as, or intends it to be a private retirement plan, does not make it so. *See, e.g., In re Barnes*, 275 B.R. 889, 897 (Bankr.E.D.Cal.2002)("Subjective intent alone is not sufficient for the creation of an exemptible private retirement plan."); *In re Phillips*, 206 B.R. 196, 201 (Bankr.N.D.Cal.1997)("[T]he statement that Debtors intended to retain their assets for their retirement is tantamount to saying they intend to keep those assets from their creditors."), *aff'd* 218 B.R. 520 (N.D.Cal.1998); *Yaesu Elec. Corp. v. Tamura*, 28 Cal.App.4th 8, 33 Cal.Rptr.2d 283, 286 (1994)("[N]either the debtor's mere compliance with the pertinent IRS rules in creating the private retirement plan nor the debtor's designation of the asset as a private retirement plan translates to an automatic exemption from execution.").

██ C.C.P. § 704.115(a)(1) applies only to private retirement plans set up by private employers or employee groups, not by individuals acting on their own, outside of the employment sphere. *See Lieberman v. Hawkins (In re Lieberman)*, 245 F.3d 1090, 1093 (9th Cir.2001)(finding that C.C.P. § 704.115(a)(1) was "intended to exempt retirement plans established or maintained by private employers or employee organizations, not arrangements by individuals to use specified assets for retirement purposes."); *In re Rogers*, 222 B.R. 348, 351 (Bankr.S.D.Cal.1998)(stating that, under C.C.P. § 704.115(a)(1), exclusively self-funded plans are only exempt if they qualify through a professional corporate entity); *In re Phillips*, 206 B.R. at

202 ("[F]rom the context of the statute, it is evident that the Legislature had in mind plans involving third parties since the statute refers, by way of example, to 'union retirement plans.' ").

In addition, if individuals could create and exempt "private retirement plans" outside of an employment or associational context under C.C.P. § 704.115(a)(1), the provisions of C.C.P. §§ 704.115(a)(3) and 704.115(e), as discussed below, effectively would be meaningless. *Lieberman,* 245 F.3d at 1095 ("[I]f a debtor were permitted to exempt a fund created by himself under § 704.115(a)(1), ... the 'necessary for support' limitation for plans created by the debtor under [§ 704.115(a)(3) ] would be eviscerated."), quoting *Rogers,* 222 B.R. at 351. Regardless of the debtor's intent and the description provided by Sun Life in the Brochure and Client Guide, the Keyport Annuity does not qualify as a private retirement plan for the purposes of C.C.P. § 704.115(a)(1).

▮ The Keyport Annuity also is not a profit sharing plan designed and used for retirement purposes pursuant to C.C.P. § 704.115(a)(2). *See In re Barnes,* 275 B.R. at 897 (stating that a profit sharing plan is an annuity purchased with the profits of a business or some other enterprise); *see also In re Bloom,* 839 F.2d 1376, 1377 (9th Cir.1988)(where the debtor, a partner in a medical corporation, was a trustee of a private retirement and profit sharing plan created by the corporation).

▮ The debtor's claimed exemption further is inconsistent with the remaining subsection of the exemption statute. C.C.P. § 704.115(a)(3) exempts all amounts held in private retirement plans, including individual retirement annuities or accounts qualified under Section 408 or

408(A) of the IRC, to the extent that such amounts do not exceed the maximum amounts exempt from federal income taxation. C.C.P. § 704.115(a)(3) only exempts individual retirement annuities or accounts that are tax-qualified plans as provided for in the IRC. *Barnes,* 275 B.R. at 897 (stating that C.C.P. § 704.115(a)(3) provides an exemption for individual retirement annuities or accounts only if they are tax-qualified plans, which satisfy "specific requirements of the Internal Revenue Code ... entitling it to receive favorable tax advantages."); *In re Rogers,* 222 B.R. at 350 (setting out the qualifying attributes of individual retirement accounts and annuities under 26 U.S.C. § 408 of the IRC).

With respect to individual retirement annuities, 26 U.S.C. § 408(b) provides:

(b) For the purposes of this section, the term "individual retirement annuity" means an annuity contract ... issued by an insurance company which meets the following requirements:

(1) The contract is not transferable by the owner.

(2) Under the contract—

(A) the premiums are not fixed,

(B) the annual premium on behalf of any individual will not exceed the dollar amount in effect under section 219(b)(1)(A) [$4,500], and

(C) any refund of premiums will be applied before the close of the calendar year following the year of the refund toward the payment of future premiums or the purchase of additional benefits.

26 U.S.C. § 408(b).[9]

Here, the Keyport Annuity specifically states that it is a non-qualified plan for IRC purposes. Exhibit A, Certificate at 3.

---

**9.** 26 U.S.C. § 219(b) provides (subject to exceptions not applicable here) that the maxi- mum amount allowable as a deduction for qualified retirement contributions of any indi-

The debtor even admits in his brief that the annuity is not an IRS-qualified annuity. Appellant's Opening Brief at 6.

Applying the elements of an individual annuity contract as outlined in § 408(b) of the IRC, the Keyport Annuity clearly does not qualify as a private retirement plan within the meaning of C.C.P. § 704.115(a)(3), because the annuity contract is assignable by the debtor owner, the single premium is fixed, and the debtor's lump sum premium payment of $10,000 exceeds the maximum annual premium payment amount allowed by the IRC as of the date of the filing of the petition.

The debtor contends that a private retirement plan need not be IRC qualified to be exempt in California and cites to *MacIntyre* in support.[10] However, even if the Keyport Annuity does not need to be qualified under the IRC as a private retirement plan for purposes of C.C.P. § 704.115(a)(3), which would be contrary to the language of the statute, under C.C.P. § 704.115(e), such annuities are exempt only to the extent necessary to provide for the support of the debtor or the debtor's dependents upon retirement.[11] *Lieberman v. Hawkins (In re Lieberman)*, 245 F.3d at 1095; *DeMassa v. MacIntyre (In re MacIntyre)*, 74 F.3d at 188; *In re Barnes*, 275 B.R. at 897; *In re Rogers*, 222 B.R. at 350.

The bankruptcy court specifically charged the debtor with the burden of proof to establish his exemption claim, but the debtor did not offer any testimony or any other evidence demonstrating that the Keyport Annuity was necessary for his support or for the support of his dependents. In fact, the debtor, who already is retired on Social Security disability, will not be entitled to receive any annuity payments under the annuity contract until the anniversary date of his 95th birthday, June 30, 2043, although he could receive distributions of accrued interest and surrender the annuity contract earlier. He did not demonstrate that the Social Security disability benefits he currently receives and his IRA are insufficient to support him in his retirement or that the Keyport Annuity is necessary for his support. Thus, the Keyport Annuity is not exempt under C.C.P. § 704.115(a)(3).

We agree with the bankruptcy court and hold that it did not err in deciding that the Keyport Annuity is not exempt as a private retirement plan under any of the provisions of C.C.P. § 704.115.

## B. Sanctions for Frivolous Appeal

The trustee asks that we impose sanctions against the debtor and his bankrupt-

---

vidual for any taxable year shall not exceed the lesser of the deductible amount or an amount equal to the compensation that can be included in the individual's gross income for such taxable year. 26 U.S.C. § 219(b)(1). Under § 219(b)(5)(A) and (B), the maximum deductible amount for the debtor for the purposes of § 219(b)(1)(a) and based on his age is $4,500 for the taxable year of 2005. 26 U.S.C.A. § 219(b).

10. The debtor does not include this argument in his opening brief, but included it in his opposition to the Objection before the bankruptcy court. Generally, an appellate court will not consider matters not specifically and distinctly argued in an appellant's opening

brief. *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir.1992). For the sake of thoroughness, however, we will address the debtor's argument here.

11. C.C.P. § 704.115(e) provides, in relevant part:

[T]he amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires.

cy attorney for bringing a frivolous appeal. The trustee contends that the debtor and his bankruptcy attorney are abusing the appellate system; specifically, the trustee charges that the bankruptcy attorney, who sold the annuity to the debtor, is attempting to modify well-established law to provide a business opportunity for himself to sell more annuities and promise other debtors that they will be able to exempt otherwise nonexempt assets in pre-bankruptcy planning. Due to this "ill-advised purchase," the estate will forfeit approximately $1,500 upon liquidation of the annuity contract. The trustee thus requests that the debtor and his bankruptcy attorney reimburse the estate this amount.

Further, the trustee asserts that this appeal forced him to respond without the aid of an attorney, due to the small size of the bankruptcy estate. Thus, the trustee also requests that the debtor and his bankruptcy attorney pay for the time, on an hourly basis, that the trustee has spent in responding to this appeal.

■ Rule 8020 allows the bankruptcy appellate panel to award sanctions for a frivolous appeal only after a separately filed motion or notice from the bankruptcy appellate panel and reasonable opportunity to respond. *Tanzi v. Comerica Bank–California (In re Tanzi)*, 297 B.R. 607, 613 (9th Cir. BAP 2003). This Rule is strictly enforced. *Id.* A request for sanctions in a party's appellate brief is insufficient to allow for the imposition of sanctions. *Nghiem v. Ghazvini (In re Nghiem)*, 264 B.R. 557, 560 n. 4 (9th Cir. BAP 2001)(citing *In re Del Mission Ltd.*, 98 F.3d 1147, 1154 (9th Cir.1996)). We thus deny the trustee's request for sanctions.

## VI. CONCLUSION

The debtor's annuity contract is not exempt under either C.C.P. § 704.100 or § 704.115 because it does not qualify as a life insurance policy or as a private retirement plan within the meaning of those statutes. The bankruptcy court did not err in making such findings and sustaining the trustee's objection to the debtor's exemption claims. We AFFIRM.