**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: LLOYD MYLES
RUCKER,

*Debtor,*

_____

RONALD A. CUNNING,

*Appellant,*

v.

LLOYD MYLES RUCKER,

*Appellee.*

No. 08-55652

D.C. No.
8:06-cv-01022-
MMM

In the Matter of: LLOYD MYLES
RUCKER,

*Debtor,*

_____

LLOYD MYLES RUCKER,
*Appellee-Cross-Appellant,*

v.

RONALD A. CUNNING,
*Appellant-Cross-Appellee.*

No. 08-55655

D.C. No.
8:06-cv-01022-
MMM

OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
May 8, 2009—Pasadena, California

Filed June 26, 2009

8053

Before: Betty B. Fletcher, Raymond C. Fisher, and Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Kyra E. Andrassy, Weiland, Golden, Smiley, Wang Ekvall &
Strok, LLP, Costa Mesa, California, for the appellants/cross-
appellees.

Mark Bradshaw and Evan D. Smiley, Shulman Hodges & Bastian LLP, Foothill Ranch, California, for the appellee/cross-appellant.

---

**OPINION**

GOULD, Circuit Judge:

Facing a civil judgment debt of more than $6.5 million, Lloyd Myles Rucker declared bankruptcy and tried to exempt his assets as belonging to private retirement plans under California Civil Procedure Code ("CPC") § 704.115. Rucker had previously placed the assets in pension and 401(k) plans funded by his wholly owned corporations. The bankruptcy court denied the exemption on the explicit ground that Rucker's retirement plans were not designed and used primarily for retirement purposes. The district court saw it otherwise and reversed this judgment. We conclude, after considering the totality of the circumstances, that the bankruptcy court's prior decision was not clear error, and we therefore reverse the district court. Because the applicable law was not free from doubt, we elaborate our reasons for disagreement with the district court's assessment.

**I**

In 1997 Ronald Cunning and Ronald Cunning D.D.S., Inc. (collectively "Cunning"), obtained a civil judgment against Rucker for $3.2 million. Rucker served 30 months in jail for his criminally fraudulent conduct that gave rise to the judgment. *See United States v. Rucker*, 132 F.3d 41 (9th Cir. 1997) (unpublished); *United States v. Rucker*, 107 F.3d 18 (9th Cir. 1996) (unpublished). With interest, Rucker now owes more than $6.5 million to Cunning on the judgment.

In 2001 Rucker established the Lloyd Rucker Defined Benefit Pension Plan (the "Pension Plan") and several 401(k)

plans (the "401(k) Plans"). The Plans were associated with three of Rucker's wholly owned corporations (the "Controlled Corporations"), and Rucker was the sole employee beneficiary of his Plans. From 2001 to 2005 Rucker aggressively funded the Plans both personally and through his Controlled Corporations. In most of these years Rucker wilfully caused the Plans to be "overfunded," in that contributions to them exceeded the annual limits imposed by the Internal Revenue Code. *See* 26 U.S.C. § 401(a)(16) (stating that retirement plans must adhere to contribution limits to earn favorable tax treatment). The overfunding amount was about 20 percent of the total value of the Plans. Also, contributions to the Plans by the Controlled Corporations were markedly substantial in relation to the salaries the corporations paid to Rucker, in some instances exceeding his salary. For example, in 2001 and 2002 the Controlled Corporations contributed at least $30,000 more each year to Rucker's retirement plans than they paid to him in salary. And in 2003 and 2004 Plan contributions were about equal to Rucker's salary.

Rucker's Plan activities quite plainly violated several Internal Revenue Service ("IRS") rules. The bankruptcy court found that Rucker "repeatedly failed to accurately disclose" to the IRS contributions made by the Controlled Corporations. Between 2002 and 2004 Rucker contributed $160,000 more to the 401(k) Plans than he disclosed to the IRS, and in 2003 alone he contributed about $150,000 more to the Pension Plan than he first reported. The record also shows that in 2003 Rucker directed a wholly owned offshore corporation to contribute $120,000 to his Plans via a foreign bank account, even though the offshore corporation was not a plan sponsor permitted to contribute to the Plans. Finally, in 2003 the Pension Plan purchased property on which Rucker lived rent-free for six months. However, the total rental value of the property for that time period constituted less than four percent of the Plan assets. Apart from this relatively small constructive rent payment, Rucker has not borrowed or withdrawn money from his Plans. The general picture is that Rucker disregarded IRS

rules in funding his Plans but that he generally did not withdraw money from his Plans for his personal use.

When Rucker filed for bankruptcy his Plans were worth about $1.2 million. By contrast, Rucker has paid Cunning virtually nothing on the judgment. Rucker has also said that he has no plans to pay any part of the judgment. Rucker explained: "It would be like paying into a black hole."

After Cunning increased his collection efforts in 2005, Rucker filed for Chapter 7 bankruptcy in Florida, but he did not meet the venue requirements and the case was transferred to the Central District of California. In the California federal bankruptcy court, Rucker declared as exempt his assets in all the Plans under CPC § 704.115(b), which exempts "all amounts held, controlled, or in process of distribution by a private retirement plan." Cunning objected to the exemption, claiming that the Plans were not exempt because they were not designed or used primarily for retirement purposes.

After a bench trial, the bankruptcy court sustained Cunning's objection and determined that the Plans were not exempt because Rucker designed and used the Plans primarily to shield his assets from Cunning. Instrumental in the bankruptcy court's reasoning were the facts that Rucker overfunded the Plans, that Rucker took at least one constructive rent payment, and that Rucker did not accurately disclose his contributions as required by IRS regulations. The bankruptcy court also found explicitly that Rucker lacked credibility.[1]

Rucker appealed to the district court, which reversed the

[1]Rucker does not challenge the bankruptcy court's adverse credibility finding, possibly because it is supported by voluminous evidence in the record. For example, Rucker first testified that he never used Controlled Corporation funds to pay personal expenses, but then changed his testimony after being presented with evidence of corporate checks used to pay for, among other things, an engagement ring.

bankruptcy court and held that although Rucker may have created the Plans in part to shield assets, he was still entitled to the exemption because the Plans were designed and used primarily for retirement purposes. Cunning appeals the district court's reversal of the bankruptcy court.[2]

The evidence taken together squarely raises the issue of whether a person who funds a retirement plan both for retirement purposes in part and to shelter assets and avoid paying debts in part has acted primarily for retirement purposes. The district court reasoned that if the evidence here showed dual purposes, it nonetheless could not conclude that the funding was primarily to avoid a debt. However, when we look at the totality of circumstances and give deference to the bankruptcy court's factual findings after trial, we come to a different conclusion.

## II

This case turns in part on our assessment of the appropriate

---

[2]By taking this appeal Cunning implicitly contends that we have jurisdiction, even though Cunning has flagged some questions about jurisdiction. The jurisdictional issue arises because, after deciding that Rucker's Plans were designed and used primarily for retirement purposes, the district court remanded to the bankruptcy court to address a separate factual issue that had not been raised by the parties. Rucker urges that we have jurisdiction in an argument framed as a cross-appeal to the district court's remand. It is always our duty to address jurisdictional issues, and so we do so here even though Cunning has invoked our jurisdiction and Rucker agrees to it. *See Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1117 (9th Cir. 2009).

We have jurisdiction over "all final decisions" of the district court, including decisions made in its bankruptcy appellate capacity. 28 U.S.C. § 158(d). Applying a "pragmatic approach in determining finality under § 158(d)," *Vyline Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 968 F.2d 887, 894 (9th Cir. 1992), we conclude that the district court decision was a final, appealable order because the parties never contested and verbally stipulated the factual issue that led to the remand, as Cunning conceded before the bankruptcy court.

standards of review. Because we are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1086 (9th Cir. 2001). We review *de novo* the bankruptcy court's decision on the scope of the exemption for private retirement plans provided by CPC § 704.115. *Dudley v. Anderson (In re Dudley)*, 249 F.3d 1170, 1173 (9th Cir. 2001). However, our precedent establishes that "whether a plan is designed and used for retirement purposes is a question of fact that we review for clear error." *Jacoway v. Wolfe (In re Jacoway)*, 255 B.R. 234, 237 (9th Cir. BAP 2000); *see also Simpson v. Burkart (In re Simpson)*, 557 F.3d 1010, 1014 (9th Cir. 2009) (reviewing for clear error whether the features of a retirement instrument "demonstrate that the product's primary purpose and effect [is] . . . a retirement plan" under CPC § 704.115). Our conclusion that a clear error standard governs review of the bankruptcy court's assessment whether a plan's funding is primarily for retirement purposes is a key factor to our evaluation of the merits of the appeal. The district court erred by applying *de novo* review to the bankruptcy court's factual determination that Rucker's Plans were not designed and used primarily for retirement purposes.[3] Applying the clear error standard, we reach a different conclusion than did the district court, and we reaffirm the bankruptcy court's decision.

---

[3]In determining that *de novo* review applied, the district court relied on *Kim v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000), which held that when facts are not in dispute, the application of law to fact is reviewed *de novo*. Yet, as *Kim* also held, retirement purpose is a factual question. *See id.* ("Whether a plan is designed and used for retirement purposes is a question of fact that the panel reviews for clear error."). That factual issue is hotly disputed here, so we are not reviewing the bankruptcy court's application of law to undisputed facts. Rather, we review the bankruptcy court's factual determination of retirement purpose; clear error review therefore applies.

## III

**[1]** Rucker claims that his Plan assets are exempt from his bankruptcy estate and beyond Cunning's reach because they fall within CPC § 704.115(b), which exempts "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan."[4] A plan used in part to shield assets is still exempt if it was designed and used primarily *for retirement purposes. Dudley*, 249 F.3d at 1176. We construe CPC § 704.115 "liberally . . . for the benefit of the debtor." *Lieberman v. Hawkins (In re Lieberman)*, 245 F.3d 1090, 1092 (9th Cir. 2001). In fact, "[t]he very purpose of the exemption is to permit a judgment debtor to place funds beyond the reach of creditors, so long as they qualify for the exemption under the law." *Schwartzman v. Wilshinsky*, 50 Cal. App. 4th 619, 629 (Ct. App. 1996).

In deciding whether a plan is designed and used primarily for retirement purposes, "[a]ll factors are relevant; but no one is dispositive." *Bloom v. Robinson (In re Bloom)*, 839 F.2d 1376, 1379 (9th Cir. 1988). Many factors previously considered by us and by California courts concern the extent of a debtor's withdrawals or loans from the plan. *See Jacoway*, 255 B.R. at 239-40 (9th Cir. BAP 2000) (listing nonexhaustive factors considered by courts when evaluating CPC § 704.115(b), most of which relate to plan withdrawals or loans). Courts have also considered a debtor's subjective intent in deciding whether the plans have a retirement purpose. *See Simpson*, 557 F.3d at 1018 (stating that "while the

---

[4]We have previously held that this exemption may apply even to single-employee plans like Rucker's that are established by wholly owned corporations. *See Cheng v. Gill (In re Cheng)*, 943 F.2d 1114, 1117 (9th Cir. 1991) ("We recognize the odd result the statute creates—one-person medical corporations are treated the same as General Motors, creating the opportunity for shareholders of tiny corporations to abuse the exemption scheme—but we may not disregard the statute's language to address problems properly left to the legislature.").

debtor's subjective intent cannot create an exemption, it may take one away").

**[2]** Because Rucker made no loans or withdrawals from his Plans other than the cited instance of his rent-free use of Plan property, he argues that we should allow the retirement plan exemption. His argument is not frivolous. We are not aware of any California or federal court in a published opinion denying an exemption under CPC § 704.115 in circumstances where the debtor made no significant withdrawals or loans from the plan. At the same time, however, we are also aware of no precedent stating that the lack of withdrawals or loans in itself conclusively establishes a primary retirement purpose. Instead, applicable precedent requires that we consider all the circumstances to determine whether Rucker's Plans were designed and used primarily for retirement purposes. *See Bloom*, 839 F.2d at 1379-80 ("All factors are relevant; but no one is dispositive. Rather, all of them must be considered in the light of the fundamental inquiry—whether the plan was designed and used for a retirement purpose."). At the outset, we answer Rucker's argument by holding that the absence of loans or withdrawals from a private retirement plan, while significant, does not in itself guarantee that the plan was designed and used primarily for retirement under CPC § 704.115. Instead, a careful assessment of the totality of circumstances is the substantive standard governing our decision, and this standard may be applied absent any withdrawals of or loans from the disputed funds.

We conclude that the bankruptcy court did not commit clear error in determining that Rucker used his Plans primarily to hide assets from Cunning, and not primarily for retirement. Once we articulate the totality of circumstances standard, and recognize that a bankruptcy court decision on the fact-intensive issue of a retirement plan's primary purpose is reviewed only for clear error, we conclude that the bankruptcy court's initial decision on that issue must be here reaffirmed and the district court's contrary conclusion reversed.

**[3]** We stress that Rucker engaged in egregious and deceptive conduct in funding his Plans. He consistently funded his Plans in excess of the contribution limits imposed by the Internal Revenue Code,[5] and he repeatedly and wilfully lied to the IRS about the extent of his Plan contributions. Rucker also secretly contributed money to his Plans using a wholly owned offshore corporation and a foreign bank account. Rucker gave no explanation for his misrepresentations or for why anyone with a genuine retirement purpose would underreport the amount of money contributed into a retirement plan or secretly contribute from offshore corporations ineligible to participate in the plan. Rucker's behavior in hiding his contributions and lying to the IRS is more consistent with a primary goal of hiding assets than with a primary purpose of saving for retirement.

**[4]** Our analysis of other factors further indicates that Rucker's Plans were designed and used primarily to shield assets. Rucker caused his Controlled Corporations in some years to contribute more to his Plans than they paid him in wages. Also, Rucker admits that he intends never to pay another cent of his "black hole" judgment and that his Plan contributions were motivated at least in part by a desire to hide assets. *See Jacoway*, 255 B.R. at 239 (listing "whether the debtor used the plan to hide otherwise ineligible assets . . . from creditors" as a factor in making the "primarily for retirement" determination) (quotation marks omitted). Rucker's expressed goal of shielding his assets from Cunning is yet another factor suggesting that his Plans were not used primarily for retirement purposes. *See Simpson*, 557 F.3d at 1018

---

[5]The district court discounted Rucker's overfunding in part because the case the bankruptcy court cited in considering overfunding, *Jacoway*, 255 B.R. at 240 n.5, mentions only excessive loans and withdrawals, not excessive contributions. Although the district court is correct that *Jacoway* did not address overfunding, this does not mean that courts are prohibited from viewing overfunding as evidence of a non-retirement purpose. The violation of IRS regulations is one factor that impacts our totality of the circumstances analysis.

(holding that courts should consider in a section 704.115 analysis "whether the particular asset, based on the debtor's subjective intent and the product's true nature, demonstrates that it is primarily intended or used for retirement purposes").

[5] In summary, when a court evaluates the totality of the circumstances to determine whether a private retirement plan is designed and used primarily for retirement purposes under CPC § 704.115, "[a]ll factors are relevant," and a court is not limited to considering only those factors previously considered by other California and federal courts. *Bloom*, 839 F.2d at 1379-80. Courts may also consider, as the bankruptcy court did here, whether the debtor overfunded the plan or violated other IRS rules in contributing to the plan; the contribution amount by a corporation relative to the debtor's wages from that corporation; and the debtor's credibility and subjective intent. None of these additional factors is required or dispositive. After considering the totality of the circumstances relating to Rucker's Plan activities, we conclude that the bankruptcy court did not make a clear error in its conclusion that the Plans were designed and used primarily to shield assets. We hold that Rucker's Plans are not exempt under CPC § 704.115.

## IV

A private retirement plan is not necessarily designed and used primarily for retirement under CPC § 704.115 merely because a debtor never withdraws or borrows from the plan. Here, Rucker's unlawful and deceptive behavior in funding his Plans indicates, considering all the circumstances, that his Plans were not designed and used primarily for retirement and thus are not exempt under CPC § 704.115. We agree with the bankruptcy court that Cunning's objection to the exemption should be sustained. We reverse the contrary conclusion of

the district court. We remand for further proceedings consistent with this decision.[6]

**REVERSED AND REMANDED.**

---

[6]By concluding that we have jurisdiction over this appeal, we decide in favor of Rucker's cross-appeal. That cross-appeal correctly asserted that the district court's order was a final decision and that its remand to the bankruptcy court on an unrelated factual issue was not necessary. As a result of our decision, neither party may raise the previously uncontested factual issue on remand.